RENDERED: DECEMBER 16, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0370-MR

BRETT A. SMITH                                           APPELLANT

V.

ON APPEAL FROM HENRY CIRCUIT COURT
HONORABLE KAREN A. CONRAD, JUDGE
NO. 14-CR-00015

COMMONWEALTH OF KENTUCKY                           APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

Brett A. Smith was convicted of one count of sodomy in the first degree, victim under 12 years old, and three counts of sexual abuse in the first degree, victim under 12 years old, by a Henry County jury. He was sentenced to a total of twenty-five years' imprisonment. He now appeals to this Court as a matter of right. *See* KY. CONST. Section 110(2)(b). After careful review of the record and arguments of the parties, we affirm the Henry Circuit Court.

## I. BACKGROUND

In May 2013, M.F.,[1] who was 12 years old at the time, disclosed to her aunt that her mother, Laura Pike, and her mother's live-in boyfriend, Brett Smith, had sexually assaulted her on multiple occasions. During the summer of 2013, M.F. underwent two forensic interviews regarding these allegations. In

---

[1] We use initials to identify the juveniles in this case to protect their privacy.

February 2014, Smith and Pike were both indicted by a Henry County grand jury on multiple charges. Smith, specifically, was indicted on one count of sodomy in the first degree, victim under 12 years old, and three counts of sexual abuse in the first degree, victim under 12 years old. Pretrial litigation ensued, including an interlocutory appeal by the Commonwealth regarding a trial court ruling excluding certain Kentucky Rule of Evidence (KRE) 404(b) evidence. Just prior to trial, Smith's and Pike's cases were severed. Smith proceeded to a trial by jury in February 2020 and was convicted of all counts. The Henry County jury recommended sentences of twenty-five years on the sodomy count and five years on each of the sexual abuse counts and further recommended that these sentences be served concurrently. The trial court sentenced Smith consistently with the jury's recommendation. Smith then appealed to this Court. We will discuss additional facts as needed for our analysis.

## II. ANALYSIS

Smith alleges the trial court committed five errors. First, he alleges the trial court erred in denying his motion for a directed verdict on one of the sexual abuse counts. Second, he alleges the trial court erred by admitting testimony about wrongful acts Pike committed outside his presence and without his knowledge. Third, he asks this Court to review M.F.'s psychotherapy records to determine if the trial court erred in concluding they did not contain any exculpatory evidence. Fourth, he argues that his speedy trial right was violated by the Commonwealth's interlocutory appeal of the trial

2

court's ruling excluding KRE 404(b) evidence. Finally, Smith argues that the trial court abused its discretion when it denied his motion for a reduced sentence under Kentucky Revised Statute (KRS) 532.070. We will discuss each allegation in turn.

### A. The trial court did not err in denying Smith's motion for a directed verdict.

Smith first argues that the trial court erred in denying his motion for a directed verdict on one count of sexual abuse, specifically, that was described in Count II of the indictment. In order to understand Smith's argument, we must describe certain parts of the proceedings in detail, beginning with the indictment itself.

As previously described, Smith was indicted on one count of sodomy in the first degree and three counts of sexual abuse in the first degree. Each of the sexual abuse counts is described identically in the indictment:

> On or about and between July 1, 2012, and November 30, 2012, in Henry County, Kentucky, the above-named defendant, BRETT A. SMITH, committed the offense of sexual abuse in the first degree, a class C felony, when he had sexual contact with M.F., date of birth July 15, 2001, a person less than twelve years of age, all in violation of KRS 510.110, contrary to other laws, statutes, and regulations as made and provided in such cases, and against the peace and dignity of the Commonwealth of Kentucky.

Use of identical indictment counts is the typical practice of the Commonwealth. *See Johnson v. Commonwealth*, 405 S.W.3d 439, 453 n.8 (Ky. 2013). Although sometimes problematic, the practice is compliant with our general notice-pleading standard. *Id.* Indictments such as this are then fleshed out through bills of particulars and then by the jury instructions at trial. *Id.*

3

During Smith's trial, M.F. testified to at least four separate incidents of sexual assault perpetrated on her by Smith and Pike in Henry County. The first incident that occurred in Henry County began when she was in Smith and Pike's bedroom playing on the computer. According to her testimony, Smith and Pike were sitting on either side of her when they began touching her legs and trying to pry them open. Eventually they told M.F. that it was their turn to play on the computer, and they put on pornography. M.F. testified that Smith and Pike removed her clothing. They then rubbed, put their fingers in, and licked her vagina. She also stated that Smith attempted to insert his penis into her vagina but that it would not fit.

M.F. also testified that on at least two occasions Smith and Pike went into her bedroom in the middle of the night to sexually assault her. She stated that on those occasions Smith and Pike removed her clothes and then had oral sex with her, put their fingers on her vagina, and inserted their fingers into her vagina. M.F. also testified to one instance that occurred during the day. On that occasion, Pike and Smith made G.F., M.F.'s younger brother, go outside. They then began kissing each other on the couch before telling her to go into their bedroom with them. She testified that Smith and Pike took off her clothes. She stated she was "orally assaulted" and that Smith and Pike put their fingers in her. She also testified that Pike sat on her face but that she kept her mouth closed and did not breathe.

In addition to those specific instances, M.F. testified that Smith and Pike grabbed her hands and put them on Smith's penis. They also made her put her

4

mouth on his penis. She did not link these instances to any particular occasion of sexual assault as previously described. She did, however, explain that the acts performed on her were very similar every time they occurred.

At the close of the Commonwealth's case, Smith moved for a directed verdict, arguing that at least one of the sexual abuse charges should be dismissed. He argued that it was unclear how many acts of sexual abuse took place but that M.F. testified to two instances at most. The Commonwealth, on the other hand, argued that the first instance of sexual assault that M.F. testified occurred in Henry County included both sodomy and sexual abuse. The trial court denied Smith's directed verdict motion, specifically stating that it was "not sure what [it would] see on the instructions," and that it had seen the Commonwealth's proposed instructions[2] but not Smith's. At the close of the defense case, Smith renewed his motion for a directed verdict, "stand[ing] on [his] prior arguments." The trial court again denied his motion.

The Commonwealth then submitted a new set of jury instructions with slight changes from its original set. Under the instruction for Count 1, the jury was instructed to find Smith guilty of sodomy in the first degree if it believed beyond a reasonable doubt that Smith engaged in deviate sexual intercourse with M.F. under the following circumstances:

> while in the bedroom of Brett Smith and Laura Pike . . . [M.F.] was sitting between them playing a game on a laptop computer when Brett Smith and Laura Pike took the computer from [M.F.] and began to watch porn in her presence, then pried her legs open, all

---

[2] The Commonwealth submitted a set of proposed jury instructions prior to M.F.'s testimony.

5

while the door to the bedroom was closed, and placed his mouth on her vagina.[3]

Under the instruction for Count 2, the jury was instructed to find Smith guilty of sexual abuse in the first degree if it believed beyond a reasonable doubt that Smith subjected M.F. to sexual contact under the following circumstances:

> while in the bedroom of Brett Smith and Laura Pike . . . [M.F.] was sitting between them on the bed playing a game on her computer when Brett Smith and Laura Pike took the computer from [M.F.] and began to watch porn in her presence, he then took her hands and put them on his penis, all while the bedroom door was closed.

Under the instruction for Count 3, the jury was instructed to find Smith guilty of sexual abuse in the first degree if it believed beyond a reasonable doubt that Smith subjected M.F. to sexual contact under the following circumstances:

> on the occasion when he and Laura Pike made [G.F.] go outside, while [M.F.] stayed inside the home, Laura Pike and Brett Smith began to touch each other on the couch, before taking her to their bedroom where Brett Smith fondled her vagina with his fingers.

Finally, under the instruction for Count 4, the jury was instructed to find Smith guilty of sexual abuse in the first degree if it believed beyond a reasonable doubt that Smith subjected M.F. to sexual contact under the following circumstances:

> on the occasion in the bedroom of [M.F.] . . . when while she laid asleep in her bed, Brett Smith and Laura Pike came into her bedroom, removed her clothing while she pretended to still be asleep and Brett Smith fondled her vagina with his finger.

---

[3] For the sake of brevity, we only quote the portion of the jury instructions that provided the factual details of the crimes. Each jury instruction also required the jury to determine if it believed beyond a reasonable doubt that the events described occurred in Henry County, "on or about and between July 1, 2012 and November 20, 2012," and when M.F. was less than 12 years old.

6

Smith objected to these instructions explaining that he did not believe the jury should be given more than three total instructions, two for sexual abuse and one for sodomy. He argued that M.F. testified to two instances of sexual assault that occurred in the middle of the night and to one that occurred during the day, totaling only three separate instances. The Commonwealth countered Smith's argument by asserting that M.F. actually testified to four separate instances: the very first time in Henry County, the two occasions in the middle of the night, and one instance during the day when Smith and Pike were kissing on the couch. The Commonwealth echoed its argument from the directed verdict motion, consistent with its proposed instructions, that the first instance of sexual assault included both sodomy and sexual abuse. Smith then argued that the first instance should only be presented to the jury as the sodomy count and that the jury should only be instructed on two other sexual abuse counts. The trial court overruled Smith's objection and instructed the jury consistent with the Commonwealth's proposed instructions.

To this Court, Smith argues that no reasonable juror could associate M.F.'s allegation that she was forced to place her hand on Smith's penis with any particular instance of sexual assault because she did not testify on which occasion she was forced to do so. He notes that the Commonwealth informed the jury during its opening statement that one act of sexual abuse occurred when Smith and Pike forced M.F. to put her hand on Smith's penis during the very first incident that occurred in Henry County, which was the occasion

7

when M.F. was playing on the computer in Smith and Pike's bedroom. Smith argues that it was unreasonable for the jury to find that M.F. was forced to touch Smith's penis with her hand on this occasion (and as specified in the jury instructions) because she did not link the two in her testimony. Smith argues that, therefore, the jury's verdict on Count 2 should be vacated and a judgment of acquittal should be entered.

In his brief to this Court, Smith acknowledges the proper standard by which we review a motion for directed verdict.

> On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Smith argues that because the Commonwealth specified during its opening statement that one count of sexual abuse occurred during the incident with the laptop in the bedroom, the trial court should have determined whether there was sufficient evidence of this particular fact pattern to survive a directed verdict motion. Smith relies on two cases: *Miller v. Commonwealth*, 77 S.W.3d 566 (Ky. 2002), and *King v. Commonwealth*, 554 S.W.3d 343 (Ky. 2018). We disagree that *Miller* and *King* are determinative of this issue.

8

In *Miller v. Commonwealth*, Wayne Miller was convicted of 150 counts of rape in the first degree, 75 counts of sodomy in the first degree, and one count of intimidating a witness. 77 S.W.3d at 568. Except for the first and last acts of rape and the first act of sodomy, the victim did not describe any facts about the other incidents during her testimony. *Id.* Instead, the large number of counts of each offense was extrapolated mathematically from her testimony about the frequency with which she was sexually assaulted. *Id.* at 572–73. Although we reversed Miller's conviction on other grounds, we held that the jury instructions, which also did not distinguish between the different counts of rape and sodomy, were erroneous. *Id.* at 577. We further explained that if the evidence was the same on retrial, Miller would "be entitled to directed verdicts of acquittal with respect to those counts unsupported by sufficient evidence to distinguish them as separate offenses." *Id.*

In *King v. Commonwealth*, King was convicted of two counts of sodomy in the first degree and two counts of sexual abuse in the first degree. 554 S.W.3d at 348. King argued that the jury instructions for the two counts of sexual abuse violated his right to a unanimous verdict because the jury was presented with multiple instances of sexual abuse that could have satisfied each instruction. *Id.* at 350. We held that the jury instructions were erroneous, and in doing so, we stated, "[i]f the Commonwealth has no evidence that can distinguish one crime from the others, then its evidence is insufficient to convict." *Id.* at 355.

9

In both *Miller* and *King*, we held that the jury instructions were erroneous. Jury instructions, however, are reviewed differently than a trial court's decision on a motion for directed verdict. We employ the directed verdict standard retrospectively, sometimes knowing more than the trial court knew at the time it made its determination on the motion. Despite this potential for additional knowledge, we are constrained to review the trial court's determination in light of the stage of the proceeding in which it was made. We thus review the trial court's decision on a motion for directed verdict taking into account only the information the trial court had in front of it at the time it made its decision. Because of this constraint on our review, the specific facts as described in the jury instructions have no bearing on our review of the trial court's ruling on a motion for directed verdict. In fact, we explained in *Acosta v. Commonwealth* that "a directed verdict may be inappropriate even though the jury instructions were flawed." 391 S.W.3d 809, 816 (Ky. 2013), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020).

On a motion for directed verdict, the trial court must compare the proof presented at trial with the statutory elements of the alleged offense. *Id.* (citing *Lawton v. Commonwealth*, 354 S.W.3d 565, 575 (Ky. 2011)). "The directed-verdict question is not controlled by the law as described in the jury instructions, but by the statutes creating the offense." *Id.* (citing *Lawton*, 354 S.W.3d at 575). Relevant to the case at bar, a person is guilty of sexual abuse in the first degree when he "subjects another person to sexual contact who is incapable of consent because" she is less than twelve years old. KRS

10

510.110(1)(b)2. Sexual contact is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party." KRS 510.010(7).

In this case, at the directed verdict stage, sufficient evidence had been presented to distinguish at least three counts of sexual abuse, even if those were different than the counts as described in the jury instructions. M.F. testified that on the first occasion of sexual assault that occurred in Henry County, when she was on the computer in Smith and Pike's bedroom, Smith rubbed his fingers on her vagina and inserted his fingers into her vagina. M.F. testified that when Smith and Pike came into her room in the middle of the night, Smith touched her vagina with his fingers and again inserted his fingers into her vagina. M.F. also testified that on the sole occasion of sexual assault that occurred during the day, Smith put his fingers inside of her vagina. Finally, M.F. testified that Smith forced her to place her hands on his penis. This testimony established at least three separate counts of sexual abuse. Accordingly, the trial court did not err in denying Smith's motion for a directed verdict.

**B. The trial court did not err in admitting testimony regarding Pike's actions.**

Smith next argues that the trial court erroneously admitted evidence of two instances of Pike's actions that were irrelevant to Smith's guilt and prejudicial. Specifically, Smith argues that the trial court erroneously admitted evidence that Pike sexually abused M.F. in the shower in Jefferson County and evidence of a conversation Pike had with M.F. in the driveway of their home in

11

Henry County. During that conversation, Pike told M.F., "If he asks you if you have eaten my pussy, you need to say 'yes'" and that "these things happen all the time behind closed doors." Smith argues that these instances of Pike's conduct were irrelevant and unduly prejudicial. He also argues that they should have been excluded under KRE 404 as other bad acts of Pike and that the Commonwealth failed to provide notice of its intent to introduce this evidence as required under KRE 404(c). We review the trial court's decision to admit evidence for abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Under KRE 402, "[a]ll relevant evidence is admissible" unless otherwise excluded by the law or our rules of evidence. However, "[e]vidence which is not relevant is not admissible." KRE 401. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. Unduly prejudicial evidence has been defined as evidence that "appeals to the jury's sympathies, arouses its sense of horror, provokes its

12

instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Richmond v. Commonwealth*, 534 S.W.3d 228, 232 (Ky. 2017) (quoting *Butler v. Commonwealth*, 367 S.W.3d 609, 615 (Ky. App. 2012)) (internal quotation marks omitted).

KRE 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may be admissible "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). It may also be admissible if it is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2). KRE 404(b) is exclusionary in nature. *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994). Under KRE 404(c),

> if the prosecution intends to introduce evidence pursuant to subdivision (b) of this rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence. Upon failure of the prosecution to give such notice the court may exclude the evidence offered under subdivision (b) or for good cause shown may excuse the failure to give such notice and grant the defendant a continuance or such other remedy as is necessary to avoid unfair prejudice caused by such failure.

KRE 404(b) and (c) apply not only to other bad acts of the defendant, but also to persons other than the defendant. *Parker v. Commonwealth*, 241 S.W.3d 805, 812 (Ky. 2007). To determine if other bad acts evidence is admissible, the

13

trial court should use a three-prong test: (1) Is the evidence relevant for a purpose other than criminal disposition? (2) Does it have probative value? (3) Is its probative value substantially outweighed by its prejudicial effect? *Purcell v. Commonwealth*, 149 S.W.3d 382, 399–400 (Ky. 2004) (citation omitted). In applying KRE 404(b) to persons other than the defendant, we must apply the first two prongs of the three-prong test to the person who committed the other bad act and not the defendant.

### 1. Jefferson County shower incident

M.F. testified that the very first time she was sexually assaulted was when she was 9 years old and lived in Jefferson County with her mother, her siblings, and Smith. M.F. testified that her mother told her to take a shower with her, and while in the shower, Pike fondled M.F.'s vagina. Pike asked M.F. if she enjoyed it, and M.F. responded affirmatively, believing it was the answer her mother wanted. M.F. testified that when they got out of the shower, both she and her mother put on matching multi-colored zebra print skirts and that she was not permitted to put on underwear. She testified that she was then made to sit on Smith's lap, and Smith touched her vagina.

Under the first prong, the evidence that Pike sexually abused M.F. in the shower in Jefferson County is relevant for a purpose other than to prove Pike's criminal disposition. Given the sequence of events, evidence that Pike sexually abused M.F. in the shower was relevant to show Pike's plan and preparation for the repeated acts of sexual abuse, including the very first instance with Smith which immediately followed the abuse in the shower.

14

The next prong of the test is whether the evidence has probative value. Under this prong we ask if the evidence of the other bad act is sufficiently probative of its commission by the accused to warrant its introduction into evidence. *Parker v. Commonwealth*, 952 S.W.2d 209, 213 (Ky. 1997). The evidence is sufficiently probative if the trial judge believes "the jury could reasonably infer that the prior bad acts occurred and that [Pike] committed such acts." *Id.* at 214. M.F. testified to the sexual abuse in the shower, and no evidence to contradict her testimony was presented at trial. Thus, the jury could reasonably infer that Pike did in fact sexually abuse M.F. in the shower in Louisville.

Finally, we must determine whether the probative value of the evidence in proving Smith's guilt was substantially outweighed by its prejudicial effect. Evidence that Pike sexually abused M.F. in the shower was probative of Smith's guilt of the charged crimes because it was part of the sequence of events that led directly to the first instance in which Smith sexually abused M.F. The shower incident was relevant to show Pike was grooming M.F. for the incident that immediately followed the shower in which Smith touched M.F.'s vagina while she sat on his lap. The fact Pike had matching skirts picked out for both of them to wear is evidence that the shower incident was part of a larger plan, concocted with Smith, for the continued sexual abuse. Smith's apparent failure to react with surprise when M.F. sat on his lap without underwear and then his sexual abuse of her apparently without any conversation with Pike tends to show that he and Pike jointly planned the entire sequence of events, including

15

the sexual abuse in the shower. Although this instance of Smith sexually abusing M.F. was not a charged offense, the trial court found it was admissible to show Smith's plan and preparation to sexually abuse M.F. This finding was not an abuse of discretion, and it follows that Pike's abuse in the shower which directly led to the first sexual abuse event was also probative for the same reasons.

In weighing prejudice versus probativeness of other bad act evidence, the evidence will only be excluded if the potential for undue prejudice substantially outweighs the probative value of the evidence. Undue prejudice is more than that which is merely detrimental to a party's case. Instead, evidence is unduly prejudicial if it "may cause a jury to base its decision on something other than the established propositions in the case." *Richmond*, 534 S.W.3d at 232 (quoting *Butler,* 367 S.W.3d at 615) (internal quotation marks omitted). That is not the case here. While Pike's sexual abuse of her daughter is certainly reprehensible, it is not so inflammatory that its danger of undue prejudice outweighs its high probative value. Accordingly, the trial court did not err in allowing its admission.

Finally, Smith argues to this Court that the evidence should have been excluded because the Commonwealth failed to provide KRE 404(c) notice of its intent to introduce the evidence at trial. Because Smith did not make this argument to the trial court, we decline to address it. *E.g., Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) ("A new theory of error cannot be raised for the first time on appeal.").

16

*2. Conversation in the driveway*

Smith also argues that the trial court erroneously admitted evidence that Pike told M.F., "If he asks you if you have eaten my pussy, you need to say 'yes'" and that "these things happen all the time behind closed doors." We first note that this evidence does not fall within KRE 404(b). The evidence is not of any particular action of Pike, but instead is evidence of statements Pike made. As such, it does not constitute an "other bad act" of Pike, and it was not offered as evidence of her character. Therefore, we will review the trial court's admission of this evidence under our general rules of relevancy: KRE 401, 402, and 403.

As explained above, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. M.F. testified about this conversation with Pike in response to a question by the Commonwealth of whether anyone ever spoke about the incidents of sexual assault. M.F. testified that Pike's statements in the driveway were the only discussion that anyone ever had about the sexual assault. Within this context, it is clear that M.F. believed the "he" in the statement referred to Smith. It is also possible that the statement referred to the first incident in Henry County when Pike sat on M.F.'s face but M.F. kept her mouth closed and did not breathe. As such, it is relevant to proving this first incident occurred. However, without any showing of Smith's knowledge of the statements, the probative value is lessened.

17

We must weigh that probative value against "the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. On the other side of the scale, the danger of the evidence being used for an improper purpose as described in KRE 403 is minimal. Without more context, evidence of Pike's statements may have been confusing to the jury because M.F. was seemingly confused by them, but not so confusing that their exclusion was required. In weighing this evidence, we cannot hold the trial court abused its discretion in admitting the statements, especially because Smith did not make a contemporaneous objection to them.

## C. The trial court did not err in concluding M.F.'s psychotherapy records did not contain exculpatory evidence.

Smith next urges this Court to review M.F.'s psychotherapy records to determine if the trial court erred in determining that they did not contain any exculpatory evidence. KRE 507 defines the psychotherapist-patient privilege. The general rule of this privilege is as follows:

> A patient, or the patient's authorized representative, has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purpose of diagnosis or treatment of the patient's mental condition, between the patient, the patient's psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

KRE 507(b). However, in *Commonwealth v. Barroso*, this Court held that "[i]f the psychotherapy records of a crucial prosecution witness contain evidence probative of the witness's ability to recall, comprehend, and accurately relate the subject matter of the testimony, the defendant's right to compulsory

18

process must prevail over the witness's psychotherapist-patient privilege." 122 S.W.3d 554, 563 (Ky. 2003). The defendant must make a preliminary showing "sufficient to establish a reasonable belief that the records contain exculpatory evidence" before the records are subject to an in camera review by the trial court. *Id.* at 564. Exculpatory evidence has been described as "evidence favorable to the accused and material to guilt or punishment, including impeachment evidence." *Id.* Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

If the defendant makes this preliminary showing, then "the witness's psychotherapy records are subject to production for an *in camera* inspection to determine whether the records contain exculpatory evidence, including evidence relevant to the witness's credibility." *Barroso*, 122 S.W.3d at 563. "If the *in camera* inspection reveals exculpatory evidence, . . . that evidence must be disclosed to the defendant if unavailable from less intrusive sources." *Id.* at 564 (citations omitted). If the trial court concludes the records contain no exculpatory evidence (and thus does not provide the records to the defense), and a conviction and appeal follow, "the appellate court, upon request, can review the records and determine whether the trial judge's ruling was an abuse of discretion." *Id.*

The Commonwealth argues that this Court's review of the records is discretionary and urges us not to review them because Smith did not make the

requisite preliminary showing of "a reasonable belief that the records contain exculpatory evidence." *Id.* at 564. Although the Commonwealth is correct that Smith did not make this showing to the trial court, he did not need to do so. Both Smith and the Commonwealth agreed that the records should be produced to the trial court for an in camera review. In doing so, the Commonwealth waived any objection it had to Smith's failure to make the requisite preliminary showing.[4] Thus, we have reviewed the records as requested by Smith to determine if the trial court abused its discretion in determining they did not contain any exculpatory evidence. After reviewing the psychotherapy records included in the record under seal, we hold that the trial court did not abuse its discretion in concluding they did not contain exculpatory evidence.

### D. Smith's right to a speedy trial was not violated.

Smith next argues that his right to a speedy trial was violated by the Commonwealth's interlocutory appeal of the trial court's exclusion of KRE 404(b) evidence. The Commonwealth sought to admit evidence that Smith raped and sodomized M.F.'s older sister. However, on November 12, 2015, the trial court excluded this evidence. After the trial court's ruling, the Commonwealth filed an interlocutory appeal under KRS 22A.020(4). On January 14, 2016, the Commonwealth filed both a notice of appeal, and a

---

[4] "[W]aiver requires proof of a 'knowing and voluntary surrender or relinquishment of a known right.'" *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky. 2004). "[W]aiver may be implied 'by a party's decisive, unequivocal conduct reasonably inferring the intent to waive,' as long as 'statements and supporting circumstances [are] equivalent to an express waiver.'" *Moore v. Assente*, 110 S.W.3d 336, 360 (Ky. 2003) (citing *Greathouse v. Shreve*, 891 S.W.2d 387, 391 (Ky. 1995)).

20

motion to continue the upcoming trial date to wait for a decision from the Court of Appeals on the interlocutory appeal. On that same day, a hearing was held at which Smith objected, asserted his speedy trial right, and argued that the Commonwealth should dismiss the case and then appeal. Noting that the decision on the KRE 404(b) issue was "a really close call," the trial court granted the Commonwealth's motion to continue the trial, refused to dismiss the case, and instead held the case in abeyance.

On February 1, 2016, Smith filed a written response to the Commonwealth's notice of appeal and motion to continue. He argued that the evidence excluded by the trial court was not vital to the Commonwealth's case, that the trial court's ruling was not the type that could be appealed by the Commonwealth, and that the trial should not be continued. Smith again asserted his right to a speedy trial.

On February 19, 2016, the trial court held a hearing at which Smith again argued that the proper procedure for the Commonwealth was to dismiss the case against him and again asserted his right to a speedy trial. The trial court asserted its belief that it could not hold any more proceedings in the case while the KRE 404(b) issue was on appeal. No further proceedings were held until the interlocutory appeal was completed. Smith never again asserted his speedy trial right in the trial court.

The Court of Appeals rendered its decision affirming the trial court on January 8, 2018, noting that Smith argued a violation of his speedy trial right to that court but declining to make an explicit holding on the issue. The

21

Supreme Court denied the Commonwealth's motion for discretionary review on June 8, 2018, approximately two-and-one-half years after the Commonwealth filed its notice of appeal.

Smith makes two arguments to this Court regarding the Commonwealth's interlocutory appeal. First, Smith argues that the Attorney General failed to exercise his duty under KRS 22A.020(4) to review the interlocutory appeal's importance to the administration of Kentucky law, and thus the Court of Appeals lacked jurisdiction over the appeal. Second, he argues that because the Commonwealth's interlocutory appeal concerned a tangential evidentiary matter, the delay attributed to the appeal violated his right to a speedy trial.

Under KRS 22A.020(4),

An appeal may be taken to the Court of Appeals by the state in criminal cases from an adverse decision or ruling of the Circuit Court, but only under the following conditions:

(a) Such appeal shall not suspend the proceedings in the case.

(b) Such appeal shall be taken in the manner provided by the Rules of Criminal Procedure and the Rules of the Supreme Court, except that the record on appeal shall be transmitted by the clerk of the Circuit Court to the Attorney General; and if the Attorney General is satisfied that review by the Court of Appeals is important to the correct and uniform administration of the law, he may deliver the record to the clerk of the Court of Appeals within the time prescribed by the above-mentioned rules.

(c) When an appeal is taken pursuant to this subsection, the Court of Appeals, if the record so warrants, may reverse the decision of the Circuit Court and order a new trial in any case in which a new trial would not constitute double jeopardy or otherwise violate any constitutional rights of the defendant.

Smith asserts that the Attorney General has a duty under KRS 22A.020(4)(b) to determine if "review by the Court of Appeals is important to the correct and uniform administration of the law" prior to prosecuting the appeal. He argues that the Attorney General failed to do so in this case and therefore, the Court of Appeals did not have jurisdiction over the interlocutory appeal. We decline to address this argument, as this matter should have been addressed during the litigation of that appeal as opposed to during the appeal from his later conviction. However, we note that the Attorney General was listed as counsel for the Commonwealth on the Court of Appeals' opinion in that case. *Commonwealth v. Smith*, No. 2016-CA-000100-MR, 2018 WL 297279 (Ky. App. Jan. 5, 2018). Presumably, the Attorney General, in being listed as counsel and in assigning a Special Assistant Attorney General to the appeal, at least conducted a cursory review of the case.

Smith next argues that the delay caused by the Commonwealth's interlocutory appeal violated his right to a speedy trial. This Court analyzes alleged violations of the right to a speedy trial under the four-factor *Barker* test. *Dunaway v. Commonwealth*, 60 S.W.3d 563, 569 (Ky. 2001) (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). We use this same test even when the delay is attributable to an interlocutory appeal by the Commonwealth. *E.g., Tamme v. Commonwealth*, 973 S.W.2d 13, 22–23 (Ky. 1998). The four factors under this test are: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant caused by the delay." *Id.* at 22. "No single one of these factors is determinative by itself." *Id.*

23

(quoting *Gabow v. Commonwealth*, 34 S.W.3d 63, 70 (Ky. 2000)). "We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Stacy v. Commonwealth*, 396 S.W.3d 787, 795 (Ky. 2013) (quoting *Barker*, 407 U.S. at 533).

### 1. Length of delay

We begin our analysis of an alleged speedy trial right violation by "determining if the delay was presumptively prejudicial to the defendant; for if it was not, the defendant's rights were not violated, and the inquiry ends." *Dunaway*, 60 S.W.3d at 569 (citing *Barker*, 407 U.S. at 530). The "length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts." *Barker*, 407 U.S. at 530.

Whether a delay is presumptively prejudicial depends on both the length of the delay and the seriousness and complexity of the charges involved. The length of the delay "is the time between the earlier of the arrest or the indictment and the time the trial begins." *Dunaway*, 60 S.W.3d at 569 (citing *Dillingham v. United States*, 423 U.S. 64, 65 (1975)). In this case, Smith was arrested in January 2014. His trial began on February 25, 2020. A delay of over six years is unquestionably presumptively prejudicial. Approximately two-and-a-half years of that delay is directly attributable to the Commonwealth's interlocutory appeal and is the only delay Smith argues violated his speedy

24

trial right. This delay by itself is also presumptively prejudicial. *See Dunaway*, 60 S.W.3d at 569 (concluding a delay of thirteen and one-half months in a case involving serious charges of moderate complexity was presumptively prejudicial).

Smith was charged with one count of sodomy in the first degree, victim under 12, and two counts of sexual abuse in the first degree, victim under 12. The sodomy count was a Class A felony and therefore undoubtably very serious. Despite the seriousness of the charges, they were not very complex. There was no scientific or physical evidence; however, Pike was indicted as a co-defendant which adds some complexity. The charges in this case do not change the fact that the two-and-one-half year delay caused by the interlocutory appeal is presumptively prejudicial.

## 2. Reason for the delay

The next factor in the *Barker* test is the reason for the delay. The *Barker* Court specified "three categories of reasons for delay: (1) a 'deliberate attempt to delay the trial in order to hamper the defense'; (2) a 'more neutral reason such as negligence or overcrowded courts'; and (3) 'a valid reason, such as a missing witness.'" *Id.* at 570 (quoting *Barker*, 407 U.S. at 531). These "different reasons should be allocated different weights—even reasons within the same category." *Id.* (citations omitted). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Miller v. Commonwealth*, 283 S.W.3d 690, 700 (Ky. 2009). "Delay due to negligence, which is a neutral reason, would weigh more heavily in favor of a

25

speedy trial violation than court overcrowding, which is also classified as a neutral reason." *Dunaway*, 60 S.W.3d at 570 (citing *Zurla v. State*, 789 P.2d 588 (N.M.1990)). Nevertheless, those neutral reasons weigh against the state "since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Stacy*, 396 S.W.3d at 796 (quoting *Miller*, 283 S.W.3d at 700). "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Miller*, 283 S.W.3d at 700. "The purpose of our analysis is to establish 'whether the government or the criminal defendant is more to blame for [the] delay.'" *Stacy*, 396 S.W.3d at 796 (alteration in original) (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)).

Before continuing to analyze this factor, we must discuss the requirement in KRS 22A.020(4)(a) that the Commonwealth's interlocutory appeal "shall not suspend the proceedings in the case." In *Eaton v. Commonwealth*, we "construe[d] the term 'proceedings' as used in KRS 22A.020(4)(a) as referring to proceedings after the attachment of jeopardy." 562 S.W.2d 637, 639 (Ky. 1978). In *Commonwealth v. Bailey*, we reaffirmed this construction of the term "proceedings" and further explained,

> once the proceedings commence and jeopardy attaches, the proceedings will not be suspended while the Commonwealth seeks review of rulings made during the course of the trial. Staying the trial or retrial while pre-trial and post-trial rulings and decisions of the circuit court are reviewed on appeal, however, will not run afoul of KRS 22A.020(4)(a).

71 S.W.3d 73, 84–85 (Ky. 2002).

26

The Court of Appeals, however, in *Commonwealth v. Blincoe*, had a different interpretation of the term "proceedings." 33 S.W.3d 533, 535 (Ky. App. 2000). That court stated, "We do not find that *Eaton v. Commonwealth . . .* permits pre-trial proceedings to be held in abeyance until a ruling is made on the interlocutory order." *Id.* It went on to hold that "[f]iling of an appeal of an interlocutory order in a criminal matter is permitted but such filing does not suspend applicable time limits for the taking of other steps in the action." *Id.* at 536. To the extent that *Blincoe* is inconsistent with *Eaton* and *Miller* as just described, we hereby overrule it.

This Court's precedent for over forty years has interpreted the term "proceedings" in KRS 22A.020(4)(a) to refer only to proceedings after the attachment of jeopardy,[5] and we will not change course today. However, we also affirm and emphasize our statement in *Eaton* that a defendant's constitutional right to a speedy trial should not be unduly threatened by the Commonwealth's interlocutory appeal. 562 S.W.3d at 639.

We now return to the second factor of the *Barker* test, the reason for the delay. In addressing whether a defendant's speedy trial rights were violated by an interlocutory appeal by the government, the United States Supreme Court explained "that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." *United States v. Loud Hawk,* 474 U.S. 302, 315

---

[5] We acknowledge that in *Commonwealth v. Terrell* we stated that "the Commonwealth is required by statute to continue with its prosecution when appealing a trial court's interlocutory order." 464 S.W.3d 495, 499 (Ky. 2015). While this was not a completely accurate statement of the law, it was not necessary to our analysis or holding in that case. We embrace the opportunity today to clarify the law in this respect.

27

(1986). However, the purpose and reasonableness of the appeal must be assessed. *Id.* In doing so, "courts may consider several factors" including "the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime." *Id.* (citing *United States v. Herman*, 576 F.2d 1139, 1146 (CA5 1978)). The Court then further explained, "For example, a delay resulting from an appeal would weigh heavily against the Government if the issue were clearly tangential or frivolous. Moreover, the charged offense usually must be sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of the appeal." *Id.* at 315–16 (citations omitted).

Our Court implicitly adopted the *Loud Hawk* test in *Tamme*. 973 S.W.2d at 23. In that case, we held that the Commonwealth's interlocutory appeal did not violate the defendant's speedy trial right. *Id.* Citing *Loud Hawk*, we explained, "Any delay attributable to time consumed by the interlocutory appeal does not count toward Appellant's speedy trial claim. The appeal was neither tangential nor frivolous. The fact that the Commonwealth prevailed on the appeal is prima facie proof of the reasonableness of taking the appeal." *Id.*

In this case, the Commonwealth did not prevail on its appeal. We, therefore, do not have the prima facie proof of reasonableness that existed in both *Loud Hawk* and *Tamme*. We must instead conduct a closer analysis of both the purpose and the reasonableness of the appeal.

28

a. <u>Purpose</u>

Turning first to the purpose of the Commonwealth's appeal, we note that there "is no showing of bad faith or dilatory purpose on the [Commonwealth's] behalf." *Loud Hawk*, 474 U.S. at 316. Smith acknowledges that the Commonwealth's appeal was not frivolous. However, this does not end the inquiry, as we must look at "the strength of the [Commonwealth's] position on the appealed issue." *Id.* at 315. The Commonwealth appealed the trial court's exclusion of evidence that Smith raped and sodomized M.F.'s older sister that the Commonwealth sought to admit under an exception contained in KRE 404(b). Although the trial court described the issue as a "close call," we must remember that KRE 404(b) is a rule of exclusion and that a trial court's decision to exclude evidence is reviewed only for abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007) ("We have construed KRE 404(b) as being exclusionary in nature."); *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000) ("[A]buse of discretion is the proper standard of review of a trial court's evidentiary rulings.").

Under KRE 404(b),

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

29

The list of exceptions in KRE 404(b)(1) is illustrative, not exhaustive. *Tamme*, 973 S.W.2d at 29. One unenumerated exception this Court has come to recognize is modus operandi:

> The modus operandi exception requires "the facts surrounding the prior misconduct must be so strikingly similar to the charged offense as to create a reasonable probability that (1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same mens rea. If not, then the evidence of prior misconduct proves only a criminal disposition and is inadmissible."

*Clark*, 223 S.W.3d at 96 (quoting *English*, 993 S.W.2d at 945). This is a high showing that the Commonwealth must make.

The trial court's order included a detailed discussion of the allegations made by both girls. The court then found that the acts Smith allegedly perpetrated on M.F.'s older sister were not so strikingly similar as to admit them under the modus operandi exception and that they also did not fall within any of the other exceptions enumerated in KRE 404(b). The Court of Appeals subsequently affirmed the trial court's ruling, holding the trial court did not abuse its discretion in excluding the evidence. Even if the ruling was a "close call" for the trial court, we cannot conclude that the ruling was "close" enough to be considered "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" such that it constituted an abuse of discretion. *English*, 993 S.W.2d at 945.

b. Reasonableness

We next turn to the reasonableness of the Commonwealth's interlocutory appeal. In doing so, we look at the importance of the issue to the case. *Loud*

*Hawk,* 474 U.S. at 315. The United States Supreme Court stated that if the issue appealed was only tangential to the case, then this factor would weigh heavily against the government. *Id.* In discussing interlocutory appeals by the Commonwealth, this Court has stated that the issue must be "vital to the Commonwealth's case." *Eaton,* 562 S.W.2d at 639; *Parker v. Commonwealth,* 440 S.W.3d 381, 383 (Ky. 2014) (citing *Eaton,* 562 S.W.2d at 639).

To determine whether an issue is either tangential or vital to the Commonwealth's case, we must look at how closely connected the issue is with "the Commonwealth's presentation of the merits" of the case. *Evans v. Commonwealth,* 645 S.W.2d 346, 348 (Ky. 1982) (Aker, J., dissenting). If the appealed trial court ruling is one excluding evidence, we must consider how necessary that evidence is to the Commonwealth's case. Although we cannot predict every permutation of every issue on which the Commonwealth may file an interlocutory appeal, we will attempt to provide some guideposts for future courts and litigants. For example, a trial court ruling granting a motion to suppress the physical evidence with which a defendant is charged is certainly vital to the Commonwealth's case. Similarly, a trial court order suppressing a defendant's confession will likely be vital to the Commonwealth's case but might be less so if there is other overwhelming evidence of the defendant's guilt. On the other hand, a trial court's order excluding KRE 404(b) evidence will almost always be tangential to the Commonwealth's case, as it is by definition never direct evidence that the defendant committed the crime with which he is charged.

The KRE 404(b) evidence at issue in the Commonwealth's interlocutory appeal in this case is clearly tangential to the Commonwealth's presentation of the merits of its case. It was not direct evidence of Smith's guilt of the sodomy and sexual abuse of M.F. In fact, its admission would only have served to bolster the credibility of M.F., who provided the direct evidence against Smith. The exclusion of the evidence likely did not have a substantial negative impact on the strength of the Commonwealth's case against Smith, as is further evidenced by his conviction.

Viewing the second *Barker* factor as a whole, the reason for the delay weighs against the Commonwealth.

### 3. *Defendant's assertion of his right*

The next factor in the *Barker* test is the defendant's assertion of his speedy trial right. "While the defendant has a right to a speedy trial regardless of whether he makes a demand, assertion of the right is a factor to consider." *Dunaway,* 60 S.W.3d at 571 (citing *Barker,* 407 U.S. at 531). Demands for a speedy trial "are 'entitled to strong evidentiary weight' in deciding whether the defendant's rights were violated." *Id.* However, the "assertion of the right to speedy trial 'must be viewed in light of [defendant's] other conduct.'" *Henderson v. Commonwealth,* 563 S.W.3d 651, 664 (Ky. 2018) (alteration in original) (quoting *Dunaway,* 60 S.W.3d at 571).

In this case, the Commonwealth concedes that Smith asserted his right to a speedy trial both at the time the Commonwealth filed its notice of appeal and at the last hearing prior to the Court of Appeals rendering its opinion. A

review of the record shows that Smith asserted his right orally at both hearings after the Commonwealth filed its appeal and again in a written response to the Commonwealth's notice of appeal and motion to continue the trial. However, Smith made no further demands for a speedy trial after February 19, 2016, a mere month after the Commonwealth filed its notice of appeal. At that point in the proceedings, his speedy trial right had clearly not yet been violated. Further, the trial court had no way of knowing how long the resulting appellate process would take. Smith did not assert his right either prior to or after the interlocutory appeal process, and in fact did not assert it after the first month of the two-and-a-half-year delay caused by the Commonwealth's appeal. As the delay persisted, Smith did not assert his speedy trial right again, and the trial court was not presented with it again. Smith's conduct in failing to vigorously or repeatedly assert his right to a speedy trial during the pendency of the appeal can be viewed as an acquiescence to the delay. Accordingly, we conclude that Smith's acquiescence to the delay causes this factor to weigh against him.

### 4. *Prejudice to the Defendant*

The final *Barker* factor is the prejudice to the defendant. There are three interests protected by the right to a speedy trial: "(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Id.* at 571–72 (quoting *Barker*, 407 U.S. at 532). The last consideration "is the most serious." *Id.* at 572 (citing *Barker*, 407 U.S. at 532).

In this case, the only prejudice Smith argues he suffered is that his defense was impaired by the delay. He does not make any arguments regarding "oppressive pretrial incarceration" or anxiety beyond that which accompanies any other prosecution. Because of this, we discuss only the last interest that is protected by the right to a speedy trial: the possibility that the defense will be impaired.

Smith argues that his defense was impaired by the delay caused by the Commonwealth's interlocutory appeal because M.F.'s "recollection of events evolved, in part due to recovered memories generated by psychotherapy." He claims that M.F.'s testimony at trial was significantly more damning than the statements she made at the forensic interviews conducted in the summer of 2013. Finally, he argues that the original February 2015 trial date that was continued due to the interlocutory appeal was close enough in time to M.F.'s forensic interviews that her testimony on that date likely would have been more consistent with those interviews. Although M.F. testified that "more memories have come to light" during her therapy sessions, Smith's assertion that her testimony in February 2015 (had she testified) would have been materially different than her testimony in 2020 is speculation. As such, Smith has failed to show concrete prejudice to his defense, and this *Barker* factor weighs against him.

5. *Weighing the factors*

We now must weigh the *Barker* factors to determine if Smith's speedy trial right was violated. In doing so, we are mindful of the United States

34

Supreme Court's statement that "if the Government had pursued [the defendant] with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense." *Doggett v. United States*, 505 U.S. 647, 656 (1992).

In this case, Smith only alleges the two-and-a-half-year delay caused by the Commonwealth's interlocutory appeal violated his speedy trial right. Although the delay was lengthy and the responsibility for it fell largely on the Commonwealth, Smith failed to adequately assert his speedy trial right and, most importantly, failed to show prejudice from the delay. Accordingly, we hold that Smith's right to a speedy trial was not violated.

**E. The trial court did not abuse its discretion when it denied Smith's motion for a reduced sentence.**

Smith's final argument is that the trial court abused its discretion when it denied his motion for a reduced sentence made pursuant to KRS 532.070. After finding Smith guilty of one count of sodomy in the first degree, victim under 12 years old, and three counts of sexual abuse in the first degree, victim under 12 years old, the jury recommended a sentence of twenty-five years on the sodomy count and five years on each of the sexual abuse counts. The jury further recommended that the sentences all run concurrently for a total of twenty-five years.

At Smith's final sentencing hearing, he acknowledged the accuracy of both the presentence investigation report (PSI) and the sexual offender risk

assessment that had been prepared by the Division of Probation and Parole. Smith moved the trial court to reduce his sentence on the sodomy count from twenty-five years to twenty years, the minimum allowable for the charge, asserting that the jury may have been confused about how the sexual abuse sentences would affect the sodomy part of the sentence. The trial court stated that it reviewed the jury instructions, that the jury instructions clearly indicted a twenty-five-year sentence recommendation, and that Smith's sentence would be twenty-five years. After the hearing, the trial court entered a written judgment sentencing Smith to twenty-five years and noting that it gave "due consideration to the PSI prepared by the Division of Probation and Parole, and to the nature and circumstances of the crime, as well as the history, character and condition of [the] Defendant."

> Pursuant to KRS 532.070(1),
>
> When a sentence of imprisonment for a felony is fixed by a jury pursuant to KRS 532.060 and the trial court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that a sentence of imprisonment is necessary but that the maximum term fixed by the jury is unduly harsh, the court may modify that sentence and fix a maximum term within the limits provided in KRS 532.060 for the offense for which the defendant presently stands convicted.

Smith argues that the trial court accepted the jury's recommended sentence without undergoing the deliberative process described in KRS 532.070 in which the trial court is required to exercise its discretion in determining whether the jury's recommendation was unduly harsh after considering "the nature and circumstances of the crime and . . . the history and character of the defendant." *Id.*

36

Smith, however, points to nothing in the record to show that the trial court "failed to fully consider" the nature and circumstances of Smith's crimes, Smith's history and character, and the "severity of the sentence recommended by the jury." *Thornton v. Commonwealth*, 421 S.W.3d 372, 378 (Ky. 2013). In fact, the trial court's final judgment directly contradicts this assertion. Accordingly, we find no abuse of discretion in the trial court's denial of Smith's motion for a reduced sentence.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Henry Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Michael Romano Mazzoli
Cox & Mazzoli PLLC

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Mark Daniel Barry
Assistant Attorney General